IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARGARET EDWARDS,         :     No. 3:26cv58
      Plaintiff          :
                    :     (Judge Munley)
                    :
  v.                  :
                    :
NATIONWIDE GENERAL     :
INSURANCE COMPANY,      :
      Defendant      :

## MEMORANDUM

This insurance-related declaratory judgment action arises out of a motor vehicle accident and a potential claim for underinsured motorists' ("UIM") benefits.  Plaintiff Margaret Edwards's disputes whether a UIM stacking waiver supplied by Defendant Nationwide General Insurance Company ("Nationwide") applies to her UIM limits.

Shortly after Nationwide removed this action from the Luzerne County Court of Common Pleas, plaintiff filed a motion for remand pending before the court.  Edwards requests that this matter be remanded pursuant to the court's discretionary ability to decline jurisdiction over declaratory judgment actions.  Based on Nationwide's admissions in opposition to the motion, there are novel and unsettled questions of Pennsylvania law involved in this case.  Those questions have not yet been answered by the courts of the Commonwealth of

Pennsylvania. Because those state courts should have the opportunity to resolve such questions, the court will grant the plaintiff's motion.

**Background**

According to the amended complaint, Edwards sustained severe injuries in a crash on October 22, 2024, in Moosic, Pennsylvania as the result of a third-party tortfeasor's negligence and/or reckless conduct. (Doc. 1-1, Am. Compl. ¶¶ 4–5). As alleged, those injuries resulted in a laminectomy and fusion at three levels of her cervical spine. Id. ¶ 6.

Edwards asserts that, due to the severity of her injuries, the tortfeasor is an underinsured motorist. Id. ¶ 7. Prior to this litigation, she requested a certified copy of her Nationwide policy with respect to her UIM benefits. Id. ¶ 8. Nationwide provided Edwards with a certified copy of a policy bearing the number 5837J 309049 ("9049 Policy"). The 9049 Policy contained a declarations page indicating that the policy provided unstacked UIM benefits in the amount of $250,000 per person. Id. ¶¶ 9–12. The 9049 Policy insures two vehicles. Id. ¶ 11.

When an individual purchases UIM coverage for multiple vehicles in Pennsylvania, stacking allows the insured to aggregate the UIM coverage limits on all their insured vehicles to increase the amount of coverage available in the event of an accident. Barnard v. Travelers Home & Marine Ins. Co., 216 A.3d

2

1045, 1047 (Pa. 2019); see also Erie Ins. Exch. v. Mione, 289 A.3d 524, 526 n.2 (Pa. 2023). Under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. §§ 1701 et seq., the default rule calls for stacking of UIM benefits per each vehicle on the policy. See 75 PA. CONS. STAT. § 1738(a). Under the MVFRL, however, the first named insured on a policy may waive stacking of their UIM coverage so long as the rejection form complies with certain requirements, including statutorily prescribed language. 75 PA. CONS. STAT. § 1738(b), (d)(2), (e). In the absence of a valid stacking waiver, Section 1738 provides insureds with the remedy of stacked UIM coverage. See Sackett v. Nationwide Mut. Ins. Co., 919 A.2d 194, 202 (Pa. 2007) ("Sackett I"), modified on reargument, 940 A.2d 329 ("Sackett II").

Stacked UIM benefits would provide Edwards with $500,000 in UIM coverage. Subsequently, as alleged, the plaintiff requested the waiver forms from Nationwide to ensure that stacking was validly waived pursuant to the above provisions of the MVFRL. (Doc. 1-1, Am. Compl. ¶ 14).

According to plaintiff, Nationwide responded by producing:

> a UM [uninsured motorists] stacking waiver that (1) was not included in Nationwide's certified copy of [the 9049 Policy]; (2) was dated October 15, 2015, more than nine years before the collision; (3) does not list the name of any insurance company, even Nationwide; (4) lists an entirely different policy number than that of [the 9049 Policy]; and (4) was very clearly edited on the date line.

3

Id. ¶ 15.

The disputed stacking waiver contains policy number PPDM 0054907186 ("7186 Policy"). Id. Plaintiff's amended complaint seeks a declaration that the stacking waiver form from the 7186 Policy is invalid and inapplicable to the 9049 Policy. In the alternative, plaintiff requests a declaration that the 9049 Policy is ambiguous in relation to the stacking of UIM coverage. In the second alternative, plaintiff seeks a declaration that the 9049 Policy is a new policy of insurance that is separate and apart from the 7186 Policy. Regardless of the route taken, plaintiff also requests that the court declare that the 9049 Policy provides her with $500,000 in stacked UIM benefits.

Edwards initiated this declaratory judgment action in the Luzerne County Court of Common Pleas. On January 13, 2026, Nationwide removed the state court action to the United States District Court for the Middle District of Pennsylvania. (Doc. 1). Thereafter, Nationwide filed an answer seeking a counter-declaration that it possesses valid and enforceable forms. (Doc. 2).

With the motion before the court, Edwards requests that the court decline jurisdiction over this declaratory judgment action. Nationwide opposes.[1] In

---

[1] Nationwide's brief in opposition is not a model of clarity. It begins: "Remand is proper [sic] as a threshold matter because there is no parallel proceeding in State court." (Doc. 8 at 1). Additionally, Nationwide's brief repeatedly miscites a decision of the undersigned, Davis v. Nationwide Mut. Ins. Co., No. 3:24CV328, 2025 WL 2618775 (M.D. Pa. Sept. 10, 2025), by referring to a different case from the Eastern District of Pennsylvania, Davis v. Nationwide Mut. Ins. Co., 228 F. Supp. 3d 386, 387 (E.D. Pa. 2017). Due to the nature of the errors, the court

4

opposing the motion to remand, Nationwide refers to several recent federal court cases which have addressed changes in policy numbers and policy terms as the result of something the defendant calls its One Product initiative. (Doc. 8 at 7–9). After considering the issues at hand and weighing the relevant factors, Edwards's arguments for declaratory relief with respect to UIM stacking will be best decided by Pennsylvania courts.

**Jurisdiction**

Pursuant to the diversity jurisdiction statute, federal courts have original jurisdiction over civil actions in which the controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1); see also 28 U.S.C. § 1441(a) (authorizing removal of state court civil actions to a federal district court with original jurisdiction); § 1446(c) (listing the requirements for removal based on diversity of citizenship).

Plaintiff is a citizen of the Commonwealth of Pennsylvania. (Doc. 1, Notice of Removal, ¶¶ 3–4). Nationwide is an Ohio corporation with its principal place of business in Columbus, Ohio. Id. The amount in controversy is the difference between $250,000 and $500,000 in UIM coverage, or $250,000. Because

---

issued a Rule 11 show cause order. (Doc. 9). In response, Nationwide's counsel avers that such errors were the result of "regrettable but honest mistakes[.]" (Doc. 10). Because the gist of defendant's arguments are discernable from its brief in opposition, the court takes no action with respect to the show cause order.

complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000, the court has jurisdiction over this case. [2] Edwards does not dispute the court's diversity jurisdiction.

In this dispute involving interpretation of the MVFRL and the terms of an insurance contract, the court has authority to grant declaratory relief pursuant to the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202. The DJA provides that: "In a case of actual controversy within its jurisdiction...any court of the United States, upon filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a) (emphasis added).

The DJA is an exception to the general rule that federal courts must exercise the jurisdiction given to them. Greenwood Racing Inc. v. Am. Guarantee & Liab. Ins. Co., 568 F. Supp. 3d 526, 529 (E.D. Pa. 2021) (citation omitted). Based on the statute's use of the word "may," "district courts possess

---

[2] As a federal court sitting in diversity, the substantive law of Pennsylvania applies to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). The court applies federal procedural law. Schmigel v. Uchal, 800 F.3d 113, 119 (3d Cir. 2015). Declaratory relief is a mere procedural device by which various types of substantive claims may be vindicated. Luckenbach S. S. Co. v. United States, 312 F.2d 545, 548 (2d Cir. 1963); see also Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) ("the operation of the Declaratory Judgment Act is procedural only."). Thus, to clarify, this declaratory judgment claim was originally brought in state court under Pennsylvania law, but "the question of whether to exercise federal jurisdiction to adjudicate the controversy became a procedural issue under federal law." Reifer v. Westport Ins. Corp., 751 F.3d 129, 134 n.4 (3d Cir. 2014).

discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995); see also Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 494 (1942). "In other words, a district court may abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction." DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co., 10 F.4th 192, 196 (3d Cir. 2021). In such matters, district courts are authorized to stay or to dismiss an action seeking a declaratory judgment before trial. Reifer v. Westport Ins. Corp., 751 F.3d 129, 139 (3d Cir. 2014) (citation omitted). District courts may also remand declaratory judgment cases removed to their jurisdiction. Kelly v. Maxum Specialty Ins. Grp., 868 F.3d 274, 280 n.3 (3d Cir. 2017)

**Standard of Review**

Motions to remand are evaluated using the same analytical approach as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Papp v. Fore-Kast Sales Co., 842 F.3d 805, 811 (3d Cir. 2016) (citations omitted). "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the complaint and

7

documents referenced therein and attached thereto, in the light most favorable to the plaintiff," but "[i]n reviewing a factual attack, the court may consider evidence outside the pleadings." Id. (citations omitted).

As indicated above, Nationwide admits that the policies at issue were impacted by changes related to its own One Product initiative. (Doc. 8 at 2). Edwards asserts that, prior to discovery, the court is precluded from considering whether One Product-related changes are involved. (Doc. 11, Reply at 4).

Nationwide's candor should not be set aside without consideration. The court will accept Nationwide's representation that this case is another example of One Product UIM litigation. This is not the only case in federal court of recent vintage where an insured has contested the amount of UIM benefits available under a Nationwide policy due to a different policy number appearing on forms required under the MVFRL. Additionally, even without discovery in this case, Edwards's pleading specifically contemplates a future argument that the 9049 Policy was "another policy" issued by Nationwide, which constitutes a "new policy" for which "a statutorily-prescribed waiver of stacking was never obtained." Id. ¶ 23. Those specific arguments are the foundation of more intricate arguments advanced in at least one other One Product stacking waiver case, which is now on appeal. See McGuire v. Nationwide Affinity Ins. Co. of Am., No. 2:23-CV-1347, 2024 WL 4150098, at *3 (W.D. Pa. Sept. 11, 2024) (Ranjan, J.),

8

reconsideration denied, No. 2:23-CV-1347, 2025 WL 723203 (W.D. Pa. Mar. 6, 2025), app. filed, No. 25-1789 (3d Cir. Apr. 30, 2025).

Nationwide has not pointed to a state court decision on these issues and the court's research has uncovered none. As discussed below, the pattern of federal litigation and lack of state court guidance with respect to insurer-driven One Product changes cannot be ignored in considering Edwards's motion to remand.

**Analysis**

There are other compelling reasons to avoid a head-in-the-sand approach. Edwards requests that the court abstain from hearing this action and return the matter to the Luzerne County Court of Common Pleas. In considering Edwards's request, the DJA provides a "breadth of leeway" with respect to exercising jurisdiction. Wilton, 515 U.S. at 286. Nonetheless, the court's discretion under the DJA is not absolute; it is bounded and reviewable. DiAnoia's Eatery, LLC, 10 F.4th at 196 (quoting Reifer, 751 F.3d at 140).

Reifer established a uniform set of factors for district courts to review prior to exercising that discretion. In deciding whether to exercise DJA jurisdiction, a paramount consideration is "the 'existence or non-existence of pending parallel state proceedings to the declaratory judgment action[.]" DiAnoia's Eatery, LLC, 10 F.4th at 196 (3d Cir. 2021) (discussing Reifer); see also Kelly, 868 F.3d at 289

9

(determining that state tort actions and federal declaratory judgment actions are not parallel proceedings).  The existence of parallel proceedings is not dispositive, but "'militates significantly' in favor of either declining or exercising jurisdiction." DiAnoia's Eatery, LLC, 10 F.4th at 196 (quoting Reifer, 751 F.3d at 144–45).  Declining jurisdiction requires meaningful consideration of additional factors, to the extent they are relevant. Reifer, 10 F. 4th at 146.

Those factors include:

(1) the likelihood that a federal court declaration will resolve the uncertainty of the obligation which gave rise to the controversy;

(2) the convenience of the parties;

(3) the public interest in settlement of the uncertainty of obligation;

(4) the availability and relative convenience of other remedies;

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id.

In the insurance context, the court is also guided by State Auto Ins. Co. v. Summy, 234 F.3d 131 (3d Cir. 2001). Summy's additional guidance includes: 1) a recommendation to be reluctant to exercise DJA jurisdiction when applicable state law is uncertain or undetermined; and 2) a direction to seriously consider the fact that district courts are limited to predicting rather than establishing state law. DiAnoia's Eatery, LLC, 10 F.4th at 197 (citing Reifer, 751 F.3d at 146-67; Summy, 234 F.3d at 135).

The factors from Reifer and Summy themselves are non-exhaustive; they are designed to aid appellate abuse-of-discretion review.[3] See Reifer, 751 F.3d at 146–47. In espousing these various factors, the aim of the Third Circuit was to avoid the practice of federal trial courts summarily declining jurisdiction in insurance coverage cases. Id. at 147. Such open-ended, multi-factor tests encourage "rigorous" district court analyses of matters like this one. Id. at 144–45, 146 n.22. Therefore, there are many considerations that properly inform the exercise of discretion in this case. Id. at 146.

---

[3] Reifer further directs the court to even more factors—those set out in Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491 (1942). See 751 F.3d at 139 n.11, 146 n.21. As discussed in the body of this memorandum, this dispute does not involve another proceeding pending in state court, which the Brillhart inquiries are designed to address. See 316 U.S. at 495.

11

***Parallel State Court Proceeding / Same Issues Pending in State Court***

– As indicated above, where there are no parallel proceedings between insured and insurer, this consideration "militates significantly" in favor of retaining jurisdiction over the insured's declaratory judgment action.  See Greenwood Racing Inc., 568 F. Supp. 3d at 531 (citing Reifer, 751 F.3d at 144).  Under the fifth Reifer factor, which overlaps somewhat, the court similarly considers the general policy of restraint when the same issues are pending in a state court. 751 F.3d at 146.  The fifth "factor's 'policy of restraint' is applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding." DiAnoia's Eatery, LLC, 10 F.4th at 206.

Here, Edwards concedes that there are no parallel state court proceedings. Nationwide waited for its insured to file a declaratory judgment action in state court and then removed the matter to federal court based on diversity of citizenship.  Thus, there is no general policy of restraint to be applied here. Coextensively, there are no parallel court proceedings.   Under relevant precedent, these considerations weigh in favor of retaining jurisdiction. See Kelly, 868 F.3d at 282; Reifer, 751 F.3d at 144.

Nonetheless, the state-court-related factors are non-dispositive; otherwise, they would be the only factors for the district court to consider.  See Reifer, 751

12

F.3d at 144–45. In Reifer, the Third Circuit concluded that the trial court properly declined jurisdiction because the lack of pending parallel state proceedings were overcome by the nature of the state law issues raised by the plaintiff. Id. at 148. That brings the court to the next series of considerations.

***Nationwide One Product Litigation*** – There are other cases like this one around. That is, there has been extensive declaratory judgment litigation with respect to recent Nationwide policy changes in this court and in sister jurisdictions. Such recurring litigation looms over the consideration of the remaining enumerated factors and is best discussed independently. See Reifer, 751 F.3d at 146 ("there will be situations in which district courts must consult and address other relevant case law or considerations").

For example, in Shea v. Nationwide, the Honorable Malachy E. Mannion adopted a report and recommendation ("R&R") of then-Chief Magistrate Judge Karoline Mehalchick. Shea v. Nationwide Prop. & Cas. Ins. Co., No. 3:22-CV-00494, 2023 WL 3412248 (M.D. Pa. Mar. 1, 2023), report and recommendation adopted, 2023 WL 2810836 (M.D. Pa. Apr. 6, 2023). In that declaratory judgment action, Judge Mehalchick confronted facts that Nationwide had changed an insured's policy number, prompting an argument from the insured that the change invalidated certain UIM sign-down forms. 2023 WL 3412248 at *2. After weighing the Reifer factors, the R&R recommended remanding the

13

case to the Luzerne County Court of Common Pleas "mindful of the Third Circuit's admonition that federal courts should 'step back' and allow unsettled and novel state law issues to be resolved by the state courts." Id. at *13 (citing Reifer, 751 F.3d at 148; Summy, 234 F.3d at 135).

Nationwide objected to Judge Mehalchick's R&R. Thereafter, upon *de novo* review, Judge Mannion likewise determined that the case involved a novel or unsettled issue in Pennsylvania—whether a change in a policy number constituted a new policy. 2023 WL 2810836, at *2. Consequently, the court adopted the R&R in its entirety and remanded. Id. at *3. Edwards leans heavily on the analysis in Shea and argues for a similar outcome here. (Doc. 7, Br. in Supp. at 12–18).

Shea involved Sections 1731 and 1734 of the MVFRL. So did Davis v. Nationwide Mut. Ins. Co., No. 3:24CV328, 2025 WL 2618775 (M.D. Pa. Sept. 10, 2025), relied upon by Nationwide in opposing remand. In Davis, the plaintiffs also sought a declaratory judgment that UIM sign-down forms were invalid after the policy number and certain policy language changed. Id. at *2. On cross-filed motions for summary judgment, the court reviewed undisputed facts that such changes were the result of Nationwide's One Product initiative. Id. at *3.

Prior to resolving the issues on summary judgment, the undersigned engaged in a brief consideration of the Reifer factors and concluded that the

14

court should proceed to exercise jurisdiction and consider the merits of the parties' arguments. Id.  After the court predicted how Sections 1731, 1734, and 1791 would be applied by the Supreme Court of Pennsylvania to undisputed facts, Nationwide's motion for summary judgment was granted and plaintiffs' cross-filed motion was denied.  Id. at *4–8.  The Davis UIM sign-down forms were valid despite changes to the policy initiated by Nationwide, including a change in the policy number.

This case, however, is distinguishable from Davis in at least two ways. Procedurally, the Davis plaintiffs did not seek remand after Nationwide removed their case from the Lackawanna County Court of Common Pleas.  Rather, the parties conducted discovery under a federal court case management order and cross-filed dispositive motions in accordance with that order.  Two of the enumerated factors involve consideration of convenience of the parties and avoidance of duplicative litigation. Reifer, 751 F.3d at 146.  Additionally, within the Reifer footnotes is a directive to consider delay when declining DJA jurisdiction *sua sponte*. See id. at 149, n.25.   Had the court declined jurisdiction on its own at that point in the Davis litigation, the parties would have been forced

15

to start over in state court.  Here, the issues of delayed disposition are not on the table. [4]

Substantively, this case differs from Davis because the two matters involve different MVFRL provisions.  That is, different MVFRL provisions apply to UIM coverage waivers, reductions (or sign-downs), and stacking waivers.[5]  See 75 PA. CONS. STAT. §§ 1731, 1734, 1738, 1791.  Davis and Shea involved requests by insureds to carry UIM benefits less than the bodily injury limit, i.e., UIM sign-down forms.  The applicable provisions with respect to UIM sign-downs are Sections 1731, 1734, and 1791.  This case involves stacking waivers under Section 1738.

Sections 1731(a) and 1734 use different words to trigger an insurer's obligations with respect to sign-downs versus the language used in Section 1738(c) for stacking waivers.   Under the former, an insurer's "delivery" or "issuance" of a policy triggers its obligation to provide UIM coverage. Geist v. State Farm Mut. Auto. Ins. Co., 49 F.4th 861, 865 (3d Cir. 2022) (citing 75 PA.

---

[4] Additionally, a decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case. Camreta v. Greene, 563 U.S. 692, 709 n.7 (2011).

[5] Nationwide's changes to an insured's policy led to arguments that UIM waiver forms were invalidated in another One Product-related decision from the Eastern District of Pennsylvania. Vasquez v. Nationwide Prop. & Cas. Ins. Co., No. CV 23-273, 2024 WL 4339987 (E.D. Pa. Sept. 27, 2024) (Sanchez, J.).  There, the dispute centered on whether the more-recent Nationwide policy with a different policy number was a new policy or a renewal of the policy containing the UIM rejection form.  The Vazquez court determined that it was not a new policy.

16

CONS. STAT. § 1731(a); Blood v. Old Guard Ins. Co., 934 A.2d 1218, 1226 (Pa. 2007)). "Section 1734, in turn, provides a process that governs how much coverage that insurer must provide when it '*issue[s]* a policy.' " Id. (quoting Blood, 934 A.2d at 1226) (emphasis in original) (further citation and explanatory parenthetical omitted). "Once an insurer receives a signed election from the insured that includes 'an express designation of the amount of coverage requested,' it may *issue that policy* with the insured's requested limit." Id. (quoting Orsag v. Farmers New Century Ins., 15 A.3d 896, 901 (Pa. 2011); Lewis v. Erie Ins. Exch., 793 A.2d 143, 153 (Pa. 2002)) (emphasis in original) (further citation omitted).

With respect to the MVFRL language applicable to stacking, an insured "purchasing" UIM coverage "for more than one vehicle under a policy shall be provided the opportunity" by an insurer "to waive the stacked limits of coverage[.]" 75 PA. CONS. STAT. § 1738(c). The reference to "purchasing" pertains to the purchase of UIM coverage rather than the underlying policy itself. Franks v. State Farm Mut. Auto. Ins. Co., 292 A.3d 866, 872 (Pa. 2023).

Consequently, this case appears to be more analogous to a case from the Western District of Pennsylvania, McGuire v. Nationwide, which has been appealed and recently argued before the Third Circuit. For the purposes of resolving a dispute over the validity of a stacking waiver in McGuire, the court

17

addressed whether a Nationwide policy constituted a new policy or a renewal policy after policy numbers and policy language changed.  2024 WL 4150098, at *3.  The district court determined that such changes resulted in a new policy, not a renewal policy, and thus new stacking waivers were required. 2024 WL 4150098 at *3–10.

In doing so, McGuire explored the implications of the term "purchase" in Section 1738 alongside the case law construing that word.  Id.  The court determined that the imposition of One Product policy terms with a different scope of coverage amounted to a "purchase," i.e., the trigger of Nationwide's obligation to obtain a new stacking waiver from their insured at the risk of the policy being reformed to provide for higher UIM coverage.  Id.

The court's research has not uncovered a case where a Pennsylvania trial or appellate-level court has tackled interpretation of Section 1738 against the policy changes implicated by Nationwide's One Product initiative.  If this court were to exercise jurisdiction in this case and reach the merits, it would face the same task as in McGuire: predicting, rather than establishing, how the Pennsylvania Supreme Court would answer a question it has never addressed. As discussed next with respect to the remaining factors, that is precisely the circumstance in which Summy instructs district courts to be "particularly reluctant" in exercising jurisdiction. 234 F.3d at 135.

18

**_The Public Interest in Settlement of the Uncertainty of Obligation /_**

**_Summy Factors_** – The third Reifer factor contemplates the public interest in the settlement of the uncertainty of an obligation. 751 F.3d at 146.  Summy's additional guidance also fits within consideration of the third public interest factor. See DiAnoia's Eatery, LLC, 10 F.4th at 205, 210–11.  That is, in declaratory judgment actions, federal courts can also consider the state interest in having state courts determine questions of state law. Summy, 234 F.3d at 135.

The public interest factor is straightforward.  As Nationwide has indicated in McGuire, there are substantial consequences for its hundreds of thousands of Pennsylvania customers if its One Product policy changes are interpreted in a manner which would require fresh stacking waiver forms. 2024 WL 4150098, at *10 (as initially argued); 2025 WL 723203, at *6 (on reconsideration).  Nationwide insureds, bound by the compulsory nature of automobile insurance in the Commonwealth, likewise have an interest in any determination over whether insurer-driven changes to a policy constitute a "purchase" with respect to 75 Pa. Cons. Stat. §  1738.  Therefore, given the issues and their implications, there is more public interest at stake in this UIM case than in others.  This factor weighs in favor of declining jurisdiction.

Turning to the Summy considerations, "it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates

unsettled questions of state law, questions which might otherwise be candidates for certification to the state's highest court." Id. District courts are also directed to give "serious consideration to the fact that they do not establish state law, but are limited to predicting it." Id. Summy further instructs that "[i]t is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." Id. at 136.

These considerations tilted the scales in Shea, an action featuring Nationwide, a UIM coverage dispute, and a policy number change. 2023 WL 3412248, at *13, report and recommendation adopted, 2023 WL 2810836, at *3. They also tilt the scales here, albeit for different reasons given the different statutes involved.

If the court retained jurisdiction over this matter, it would be predicting Pennsylvania law based on the Pennsylvania Supreme Court decisions in Sackett I, Sackett II, Barnard, and Franks. The central recurring question in these cases is what policy changes constitute a new "purchase" under Section 1738(c), thereby triggering the insurer's duty to obtain a fresh stacking waiver. The Sackett decisions addressed this issue when an insured adds a vehicle to a policy. Sackett I, 919 A.2d at 202; Sackett II, 940 A.2d at 334. Barnard addressed the issue where the insured increases UIM coverage limits. 216 A.3d at 1052. Franks addressed the issue where the insured removes a vehicle and

20

does not make any coverage changes to the remaining vehicles. 292 A.3d at 871–72.

Such decisions demonstrate that the Pennsylvania MVFRL stacking cases are a continuously evolving body of law where the Pennsylvania Supreme Court has regularly stepped in to resolve unsettled questions with respect to the statute. Barnard was decided because the Third Circuit certified a question to the Pennsylvania Supreme Court with respect to the term "purchase" in Section 1738. Barnard v. Travelers Home & Marine Ins. Co., No. 18-1456, 2018 WL 9708889, at *2 (3d Cir. Nov. 27, 2018), certified question accepted, 199 A.3d 864 (Pa. 2018), and certified question answered, 216 A.3d 1045 (Pa. 2019).

Nationwide indicates that this matter is a One Product case. None of the above cases directly resolved the issues confronted in One Product-related litigation: insurer-driven changes that arguably narrow coverage scenarios without touching the coverage amounts. Thus, based on previous observations in other related cases, this matter presents a different novel question for the purposes of Section 1738(c), whether an insured makes a "purchase" of underinsured motorist insurance *when she acquires an insurers' "clarified" coverage after paying the related premium*. This question would be a candidate for certification to the state court. Thus, per Summy, it would be

21

counterproductive for the court to retain jurisdiction over this case to predict and only predict how the Pennsylvania Supreme Court would decide the issues.[6]

***Likelihood of Resolving Uncertainty of Obligations*** – To address the parallel state proceedings and public interest/Summy factors, the court took some of the delineated Reifer factors out of order. Returning to a more orderly consideration of the others, the remainder of the factors weigh only slightly in favor of retaining jurisdiction or are neutral. The first Reifer factor asks whether "the likelihood that a federal court declaration will resolve the uncertainty of the obligation which gave rise to the controversy," 751 F.3d at 146, and is not a factor "for considering the effect of a declaratory judgment on the development of state law." DiAnoia's Eatery, LLC, 10 F.4th at 205. That is, "the first Reifer factor captures whether a declaration would bring about a complete termination of the controversy between the parties and thereby avoid duplicative, piecemeal litigation." Id. (citing Reifer, 751 F.3d at 805). The court cannot consider the state law implications with this factor. Absent those considerations, this factor weighs

---

[6] Although this case may eventually be litigated like McGuire, the court is not using this case to advocate certification of any question in any pending appeal. Whether like McGuire or not, this case presents the opportunity for a federal trial court to remand a matter to a state trial court before any appellee makes a request to the Third Circuit to certify a question. Summy authorizes trial courts to head off these questions at the pass. Specifically, Summy recognizes "the necessity of restraint," so that the federal appellate courts "do not overburden the already crowded dockets of the state appellate courts with too many certifications." 234 F.3d at 135.

22

in favor of exercising jurisdiction. Declaratory relief by the court *would* unquestionably clarify and settle the dispute regarding the amount of UIM coverage under the 9049 Policy issued by Nationwide. See Kelly, 868 F.3d at 288. But based on the Summy considerations above, the nominal weight of this factor does not mean the court *should* clarify and settle the dispute regarding UIM coverage when the dispute requires the resolution of questions unanswered by the state court. 234 F.3d at 135.

**Convenience of the Parties** – The convenience of the parties factor is neutral. The Luzerne County Courthouse is in Wilkes-Barre, Pennsylvania and the undersigned sits in Scranton, approximately twenty miles away in the next county. Although plaintiff and her counsel are based in Luzerne County, the courthouses are connected by an interstate highway. To the extent that Nationwide witnesses are in Columbus, Ohio or some other distant destination, both courthouses are served by the same airport, roughly halfway between the two cities.

**The Availability and Relative Convenience of Other Remedies** – Jumping to the fourth Reifer factor—the availability and relative convenience of other remedies—this factor is also neutral. The parties have not identified whether other remedies are available because declaratory judgment actions exist for this very reason. State and federal courts are equally capable of issuing a

23

declaratory judgment one way or another. Kelly, 868 F.3d at 289. The neutrality of this factor, however, does not make any of the public interest or Summy considerations less dispositive.

**_Avoidance of Duplicative Litigation_** – Having already noted the weight of the fifth factor in retaining jurisdiction, the court turns to the sixth Reifer factor, which is the avoidance of duplicative litigation. There is no other litigation. Analysis of this factor is thus redundant to the parallel state court proceeding considerations above. Due to this redundancy, it does not add any additional weight on the scales either way.

**_"Procedural Fencing" or "Race to Res Judicata"_** – The seventh Reifer factor looks to prevent "the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata[.]" 751 F.3d at 146. Edwards initiated this action in state court and Nationwide removed the matter to federal court as permitted by statute. There is no evidence of an improper motive in Edwards's selection of venue or in why Nationwide removed the action. Therefore, analysis of this factor is also redundant to the parallel state court proceeding considerations above. Due to this redundancy, it does not factor into a weighing of the factors.

**_"Defend There – Deny Here" Considerations_** – The final Reifer factor which is applicable in the insurance context, is an inherent conflict of interest

24

between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. 751 F.3d at 146.   A duty to defend determination is not present in this case.  Thus, such "defend there – deny here" considerations are not applicable in this case.

*__Balancing the Factors__* – The cluster of factors related to the lack of parallel court proceedings in state court are outweighed by the cluster of factors related to the public interest and related to having uncertain or undetermined issues decided in the state courts.

Consequently, given the number of UIM declaratory judgment actions related to Nationwide's One Product initiative, the novel state law issues with respect to interpreting and applying 75 PA. CONS. STAT. § 1738(c) where policy changes are insurer-driven, the wide applicability of the MVFRL, and the fact that Pennsylvania courts have not decided on One Product-related issues to date, this matter should proceed in normal fashion through the state court system. See Summy, 234 F.3d at 135.  Under the specific circumstances presented in this case, the court will decline jurisdiction over this matter.

**Conclusion**

For the reasons set forth above, Edwards's motion to remand will be granted.  An appropriate order follows.

25

Date: 5/28/26

JUDGE JULIA K. MUNLEY
United States District Court

26